# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Jason Soltani and Joy Soltani,

      Plaintiffs,

v.

Crowley County Department of Human Services,
Tonia Burnett, in her individual and official capacities,
Melissa Allen, in her individual and official capacities,
Crowley County Sheriff's Office,
Terry Reeves, in his individual and official capacities,
Pueblo County Department of Human Services,
Megan Espinoza, in her individual and official capacities,
CommonSpirit Health, and
Jodi Hasenack,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Jason and Joy Soltani, by and through undersigned counsel, hereby submit their Complaint and Jury Demand as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff Jason Soltani is and has been at all times a resident of the State of Colorado. Mr. Soltani presently resides in Pueblo County, Colorado.

2.     Plaintiff Joy Soltani is and has been at all times a resident of the State of Colorado. Mrs. Soltani presently resides in Pueblo County, Colorado.

3.      Defendant Crowley County Department of Human Services ("Crowley DHS") is an administrative agency of Crowley County, Colorado.

4.      Defendant Tonia Burnett is and has been at all relevant times the Director of Crowley DHS.

5.      Defendant Melissa Allen is and has been at all relevant times a case worker employed by Crowley DHS.

6.      Defendant Crowley County Sheriff's Office is an administrative agency of Crowley County, Colorado.

7.      Defendant Terry Reeves is and has been at all relevant times the elected Sheriff of Crowley County, employed by Crowley County.[1]

8.      Defendant Pueblo County Department of Human Services ("Pueblo DHS") is an administrative agency of Pueblo County, Colorado.

9.      Defendant Megan Espinoza is and has been at all relevant times an administrator employed by Pueblo DHS.

10.     Defendant CommonSpirit Health is a Colorado non-profit corporation that operates Southern Colorado Family Medicine (as part of St. Mary-Corwin Hospital) located in Pueblo, Colorado, and St. Francis Hospital located in Colorado Springs, Colorado, which are both medical facilities where Mrs. Soltani received

---

[1] Collectively, Defendants Espinoza, Burnett, Allen, and Reeves are the "Individual Government Defendants." Defendants Pueblo DHS, Crowley DHS, and the Crowley County Sheriff's Office are the "Government Agency Defendants." All together, these Defendants are the "Government Defendants."

prenatal, labor, and delivery-related healthcare in connection with the birth of her baby born August 2024, discussed in more detail below.

11.     Defendant Jodi Hasenack is (on information and belief) and was at all relevant times a registered nurse employed by Southern Colorado Family Medical Center.[2]

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

13.     Mr. and Mrs. Soltani have been married for over ten years.

14.     Until February 2024, Mr. and Mrs. Soltani were residents of Ordway, Colorado, located in Crowley County, in the southeastern part of the state.

15.     Crowley County is a rural county and sits in the 16th Judicial District along with Bent and Otero Counties.

16.     Collectively, Bent, Otero, and Crowley Counties are three of the poorest counties in the State.

17.     Mr. and Mrs. Soltani are committed Christians who practice their religious beliefs, in part, by having a large family with multiple children.

18.     They are currently expecting their eleventh child together.

19.     Mr. and Mrs. Soltani's baby is due at the end of January, 2026.

---

[2] Collectively, Defendants CommonSpirit Health and Hasenack are referred to as the "Medical Defendants."

20.    The Crowley County Department of Human Services ("Crowley DHS") and/or the Pueblo County Department of Human Services ("Pueblo DHS") intend to take immediate custody of Mr. and Mrs. Soltani's baby when she is born.

21.    Crowley DHS has previously and unlawfully taken three newborns from Mr. and Mrs. Soltani immediately upon their birth.

22.    Pueblo DHS has not yet removed a newborn, but did virulently persist in the prosecution of dependency and neglect proceedings against Mr. and Mrs. Soltani with respect to their youngest baby, which Crowley DHS had originally taken from them.

23.    Pueblo DHS' wrongful prosecution of dependency and neglect proceedings against Mr. and Mrs. Soltani was directly influenced by Crowley DHS and the Crowley County Sheriff, Defendant Reeves.

24.    There exist no grounds that would permit either Crowley or Pueblo DHS to take the Soltani baby due to be born any day.

25.    Any efforts to remove the Soltani baby would be part of a nearly five-year campaign of harassment and retaliation against Mr. and Mrs. Soltani perpetrated by various high-level officials in the Crowley County government, and carried on by Pueblo DHS, that has already caused the Soltani family substantial irreparable harm.

26.    Mr. and Mrs. Soltani have suffered significant injuries, damages, and losses as the result of Defendants' years-long campaign of terror against them,

including separation from their nine living children, and permanent termination of their parental rights as to eight of those children.

## **BACKGROUND**

### I.    **Family Separation in the United States.**

27.    Families living in poverty are 22 times more likely to experience state intervention alleging abuse or neglect than families that do not live in poverty.

28.    There is no reasonable dispute that state involvement in child rearing is terrifying and causes irreparable and lasting psychological harm to children and parents alike.

29.    The government separates non-White families at wildly disproportionate rates.

30.    The history of the government's family separation policies can be traced directly to slavery and Indian boarding schools.

31.    The sale of children of enslaved adults was for the purpose of useful unpaid labor; removal of indigenous children from their parents and forced "education" at Indian boarding schools was intended to teach the children how to be "proper" or "appropriate" (*i.e.*, White) members of society.

32.    On a less broad, but certainly not less significant scale, the government has also used forced sterilization as a means of controlling the right to reproductive determination for women deemed "unfit" to parent, in particular poor and non-White people.

33.     Forced sterilization laws, which require cringingly obvious physical intrusion into women's bodies, fell out of favor in the early 1900s as a means of controlling the reproductive self-determination of people the government views as social undesirables.

34.     The unpopular approach of preventing reproduction of certain people via forced sterilization was replaced with more marketable tactics, like those that impose effective life sentences in prison for "habitual criminals" and, as is pertinent here, using child "welfare" laws to transfer parentage to predominantly affluent and White families.

35.     Today, the state's primary family separation tactics are parental custody achieved via enforcement of criminal laws and child custody via enforcement of dependency and neglect laws.

36.     While there are certainly instances where child welfare laws are designed to protect children who are in harm's way, they are also highly capable of manipulation and abuse by government officials.

37.     Children who are separated from their parents are significantly more likely to experience homelessness, incarceration, suicide, and other adverse outcomes.

## II.     The Soltani Family's Prior Allegations That Angered the Crowley County Government.

38.     In fall 2019, Mr. Soltani's daughter from a prior marriage was a senior at Crowley County High School.

39.    One of Mr. Soltani's daughter's teachers, Cassie Reeves, was communicating inappropriately with Mr. Soltani's ex-wife and relaying messages to the daughter in violation of the custody order entered in Mr. Soltani and his ex-wife's divorce and custody case.

40.    Specifically, the court had awarded Mr. Soltani full custody of his daughter, and his ex-wife, who did not have custody, was using Ms. Reeves as a go-between in order to circumvent the custody order.

41.    Ms. Reeves was, further, posting online that she hated Mr. Soltani and making other posts Mr. Soltani viewed as inappropriate, such as photos of her grading homework papers while surrounded by beer bottles.

42.    Mr. Soltani reported this conduct to the Crowley school district's superintendent, Scott Cuckow.

43.    After he made the report, then Under Sheriff Terry Reeves called Mr. Soltani, pretending to be investigating the report.

44.    After Defendant Reeves spoke with Mr. Soltani for about 20 minutes under the false pretenses of conducting an investigation, Defendant Reeves said to Mr. Soltani: "I want you to know that teacher is my niece, and I don't appreciate what you are doing."

45.    Defendant Reeves continued to express his displeasure that Mr. Soltani had reported Ms. Reeves' behavior, until Mr. Soltani ended the phone call.

46.     Defendant Reeves made his animosity toward Mr. Soltani and his daughter clear when, later, they had a trespasser on their property and Defendant Reeves caused the Crowley County Sheriff's Office to refuse to press charges, even though the elected Sheriff himself, Smoky Kurtz, was willing to do so.

47.     In spring 2020, both Mrs. Soltani and Mr. Soltani's daughter observed interactions that seemed inappropriate between a student and the school's principal.

48.     These interactions included touchy horseplay, the student's feet on the principal's desk for several hours, and a lack of boundaries between the two of them.

49.     Again, Mr. Soltani reported these allegations to the Crowley school district's superintendent, Cuckow.

50.     After the district ignored the issue, Mr. Soltani reported his daughter's and Mrs. Soltani's observations in the community.

51.     This caused significant backlash in the Soltanis' small town, including negative emails and newspaper articles in the town paper.

52.     The student's mother was a long-time employee of the Town of Ordway, Colorado, who worked closely with Defendant Burnett.

53.     On information and belief, the student's father was a case worker with Crowley DHS, working under the supervision of Defendant Burnett.

54.     As City Manager, the student's mother worked closely with the Director of the Crowley County Department of Human Services ("Crowley DHS"), Tonia Burnett.

55.    Also in spring 2020, Mr. Soltani's daughter graduated as valedictorian of Crowley County High School.

56.    Over a year after Mr. Soltani's daughter graduated, the Soltani family was banned from the school without explanation.

57.    The Soltani family's tires have been slashed on numerous occasions.

58.    A banker in town refused to act as notary for the Soltani family, stating that she was on the Crowley school board.

### III.    The Crowley County Government Turns the Death of Mr. and Mrs. Soltani's Baby into a Living Nightmare.

59.    Crowley County's campaign of terror began in August 2021, when Mr. and Mrs. Soltani tragically lost their seventh child—an eight-month-old boy—to undetermined causes.

60.    Defendant Reeves—by then the elected Sheriff—personally responded to a 911 call that Mr. Soltani made around 9:00 a.m. on August 9, 2021, after Mrs. Soltani discovered their baby not breathing when she went to wake him up.

61.    While Mr. and Mrs. Soltani were at the hospital grieving the earth-shattering death of their son, Defendant Reeves applied for a search warrant for the Soltani home.

62.    The search warrant did not allege that any crime had been committed in the home—in fact, it asserted that Defendant Reeves had encountered Mr. and Mrs. Soltani outside their home, administering CPR to their baby who showed no evidence of internal or external trauma—but rather said that in Defendant Reeves'

experience, the coroner would want photographs of various baby-related items and areas, and so he required entry into the Soltani home in order to take those photographs.

63.    Remarkably, a judge approved the warrant.

64.    Defendant Reeves directed his deputies to execute the warrant—which again, did not facially allege any criminal conduct—by using a battering ram to knock down the Soltanis' door.

65.    When Defendant Reeves and his deputies rammed the front door off the hinges, they knew there were six minor children present in the home with their 18-year-old half-sister, with their parents gone at the hospital.

66.    Before he entered the home, Defendant Reeves requested assistance in executing what he described as a "no-knock warrant" from a Crowley DHS case worker named Melissa Allen.

67.    Accordingly, Defendant Allen arrived at the home at some point during the Crowley County Sheriff's Office's execution of the warrant.

68.    Upon entry to the home, Defendant Reeves ascertained that it was extremely cluttered—essentially, it was a hoarder home.

69.    Purportedly because of the condition of the home and, per Crowley DHS' description, the minor children were "filthy," Defendants Reeves and Allen took the Soltani children into protective custody and moved them to a church across the street from the Soltani home.

70.    When Mr. and Mrs. Soltani came to the church to collect their children, Defendants Reeves and Allen told them they were not allowed to see or have any contact with them, and that Crowley DHS was taking them.

71.    Mr. Soltani asked if he and Mrs. Soltani could stay in a hotel or another family home with the children; Defendant Allen told him no.

72.    Crowley DHS' and the Crowley County Sheriff's Office's removal of the six living Soltani children on August 9, 2021, because the Soltani home was in hoarder condition and the kids needed showers, has now led to the coerced termination of Mr. and Mrs. Soltani's parental rights as to all six of these children.

## IV.    The Unlawful Removal of Three More of Mr. and Mrs. Soltani's Children at Birth.

73.    The same Crowley County District Court Judge who oversaw the D&N case relating to Mr. and Mrs. Soltani's eldest six children has ordered removal of three more of Mr. and Mrs. Soltani's children, at birth.

74.    The judge, Chief Judge Mark MacDonnell, was Crowley DHS' and Crowley County's lawyer before he took the bench.

75.    As to two of those children, Judge MacDonnell has also terminated Mr. and Mrs. Soltani's parental rights.

76.    These three children were born August 2022, September 2023, and August 2024.

77.    With respect to each of these Soltani children, Crowley DHS asserted that the condition of the Soltani home on August 9, 2021, the death of their baby, and

the condition of the six eldest Soltani children on the day they were removed from the Soltani home, necessitate removal and termination of Mr. and Mrs. Soltani's parental rights.

78.    Crowley DHS does not and cannot dispute that Mr. and Mrs. Soltani have never abused or neglected their three children born in 2022, 2023, or 2024.

79.    Rather, Crowley DHS contends that due to the risk of "prospective harm" to these children, Mr. and Mrs. Soltani are prohibited from parenting them.

80.    A representative of Crowley DHS has expressed the agency's intention to remove every baby that Mr. and Mrs. Soltani give birth to, at birth, for the rest of their lives.

81.    Colorado law only permits the filing of dependency and neglect petitions when a child "has suffered abuse."

82.    Only parents who are alleged to "have abused or neglected a child" are to be named as respondents in dependency and neglect petitions.

83.    The statutory requirement that abuse or neglect have actually happened prior to filing a dependency and neglect petition makes sense because it is unconstitutional to anticipatorily infringe on people's fundamental rights—for example, separating their families—in the United States.

84.    In each instance that Crowley DHS took the Soltani newborns from Mr. and Mrs. Soltani in the hospital, Mr. and Mrs. Soltani's medical providers violated

their duties of confidentiality and privilege when they disclosed that Mrs. Soltani was pregnant and had given birth.

85.     As is relevant here, Defendant Hasenack, a registered nurse, called Crowley DHS directly to report the birth of Mr. and Mrs. Soltani's baby born August 2024.

86.     When Defendant Hasenack called Crowley DHS, the file was assigned directly to Defendant Burnett, the Director of Crowley DHS.

87.     On information and belief, Defendants Allen and Burnett directed Defendant Hasenack to call them when Mr. and Mrs. Soltani's baby was born.

88.     Representatives of St. Francis Hospital, located in Colorado Springs, Colorado, and operated by Defendant CommonSpirit Health also disclosed the fact of the birth of Mr. and Mrs. Soltani's baby, and other relevant details, to Crowley DHS.

89.     Defendants Allen and Burnett relied on the unlawfully disclosed medical information to contact Judge MacDonnell by telephone to request permission to take Mr. and Mrs. Soltani's baby, and subsequently to request that Crowley DHS' custody of the baby be continued, and subsequently to file a petition in dependency and neglect against Mr. and Mrs. Soltani.

## V.     Crowley County's Improper and Coercive Conduct Relative to Legal Proceedings Against Mr. and Mrs. Soltani.

90.     The legal proceedings against Mr. and Mrs. Soltani with respect to their children have been riddled with irregularities and misconduct that began the day the Soltani baby tragically died.

91.    For example, after taking the children in the course of executing a facially invalid search warrant, Crowley DHS and the Crowley County Sheriff's Office repeatedly forced the Soltani children to be naked in front of them and other members of the public.

92.    In an open gymnasium of a church, a representative of Crowley DHS (on information and belief, Allen) took at least two close-up, detailed photographs of one of the Soltani baby girl's exposed genitals.

93.    Allen took the Soltani children to the fire station and had them shower in front of her, including "helping" them shower.

94.    The judge who signed the facially invalid search warrant that Defendant Reeves used to gain entry to the Soltani home, and to take custody of the children, also works part-time as a guardian *ad litem* ("GAL").

95.    The judge's name is Douglas Manley.

96.    Shortly after Judge Manley signed the warrant, he appointed himself GAL of the Soltani children with respect to their removal from Mr. and Mrs. Soltani's custody.

97.    Mr. Manley, acting as GAL, never disclosed his involvement in the case as a judge to anyone.

98.    Although Defendants Reeves and Allen certainly would have known of Mr. Manley's conflict because they had relied on his signature on the search warrant, they never disclosed it.

99.     Over the course of four months, Mr. Manley communicated with the Soltani children, investigated facts of the case including by interviewing Mr. and Mrs. Soltani's neighbors, and took positions adverse to Mr. and Mrs. Soltani's rights.

100.    Mr. Soltani's counsel discovered Judge/Mr. Manley's conflict the night before a trial to adjudicate whether the children were dependent or neglected was scheduled to begin.

101.    When counsel brought the issue to Judge MacDonnell's attention the next morning, Judge MacDonnell brought the parties and counsel into his chambers, off the record, to discuss it.

102.    In unrecorded proceedings, Judge MacDonnell dismissed Mr. Manley as GAL and directed his clerk to locate and appoint a new GAL.

103.    Judge MacDonnell brought the case back on the record to reschedule the trial, which was already 60 days past the statutory deadline to conduct it.

104.    After the proceedings concluded, Defendant Allen walked over to Judge MacDonnell's clerk and suggested a GAL, whom the clerk informed her was not available.

105.    The Office of Child Representative identified two other viable GAL candidates in Pueblo.

106.    Mr. Manley, knowing he was conflicted off the case, contacted both candidates directly and discussed "general details" of the case with them.

107.    After such discussions, Mr. Manley directed one of the GAL candidates, Stephanie Izaguirre, to sign a "substitution of counsel" that Mr. Manley had prepared.

108.    Without having been appointed by the court, Ms. Izaguirre signed the substitution of counsel and effectively appointed herself as GAL, at Mr. Manley's direction.

109.    Crowley DHS failed to return the Soltani children to Mr. and Mrs. Soltani's custody after Mr. and Mrs. Soltani could demonstrate a clean home.

110.    Judge MacDonnell allowed Defendant Allen and other lay witnesses to allege that Mr. and Mrs. Soltani must have withheld food from their children because the children ate a lot of pizza (2.5 pizzas shared among seven people), quickly, the day that they Defendants Allen and Reeves took them to the church across from Mr. and Mrs. Soltani's home.

111.    Judge MacDonnell improperly admitted evidence of the Soltani baby's death—including highly prejudicial and emotional autopsy photos—at the jury trial at which Mr. and Mrs. Soltani's six children living at the time of the baby's death were adjudicated dependent and neglected for failure to provide proper care and injurious environment.[3]

---

[3] So found the Colorado Court of Appeals in Case No. 2022CA1044. The decision reversing the jury's verdict and remanding the case for a new trial was issued on March 30, 2023.

112.    Crowley DHS knew at the time that it implied both that Mr. and Mrs. Soltani had caused the death of their baby that the coroner had determined that the baby had died of undetermined causes, showed no evidence of internal or external trauma, and was COVID-19 positive at the time of his death.

113.    In August 2022, Judge MacDonnell ordered Crowley DHS to take custody of Mr. and Mrs. Soltani's newborn in an ex parte, unrecorded telephone call.

114.    In November 2022 and February 2023, Crowley DHS and the Crowley County Sheriff's Office subjected the three oldest Soltani children to forensic interviews that plainly elicited coached information from the children.

115.    The purpose of Crowley DHS and the Crowley County Sheriff's Office's conduct of the forensic interviews with the children, a year and a half after the death of the Soltani baby, was to manufacture evidence in order to wrongly initiate criminal charges against Mr. and Mrs. Soltani in connection with the death of their baby.

116.    After the forensic interviews, someone from either Crowley DHS or the Crowley County Sheriff's Office asked the medical examiner who had conducted the autopsy of the Soltani baby to change her autopsy findings, in particular the cause of death.

117.    On February 8, 2023, after the second set of forensic interviews were completed, Defendant Allen told Mr. and Mrs. Soltani that Crowley County was considering pursuing criminal charges against them and that they should "rethink going to court."

118.    Defendant Allen was referring to an upcoming adjudication trial related to Crowley DHS' removal of the Soltani baby born August 2022.

119.    Mr. and Mrs. Soltani understood Defendant Allen to be saying that if Mr. and Mrs. Soltani continued to contest that their baby born August 2022 was dependent and neglected, they would be criminally charged.

120.    Because of Defendant Allen's comments, Mr. and Mrs. Soltani agreed to Crowley DHS' request that they sign a "no-fault" stipulation agreeing that their baby born August 2022 was dependent and neglected.

121.    On March 16, 2023, the medical examiner issued an amended report that reiterated her conclusion that the cause of Mr. and Mrs. Soltani's baby's death was undetermined, and that there was no evidence of trauma to the Soltani baby's body.

122.    The medical examiner made a note in her March 16, 2023, amended report that emphasized that this conclusion remained unchanged even after reviewing additional reports, interviews, and photographs she had been provided by an unidentified source.

123.    On March 30, 2023, the Colorado Court of Appeals reversed the jury's February 25, 2022, verdict finding that Mr. and Mrs. Soltani's eldest six children were dependent and neglected and ordered the Crowley County District Court to hold a new trial.

124.    On April 21, 2023, the 16th Judicial District Attorney's Office initiated criminal cases against Mr. and Mrs. Soltani in which the prosecution alleged that Mr. and Mrs. Soltani had caused the death of their baby and committed other unspecified acts of child abuse against their six eldest children.

125.    When the DA's Office charged Mr. and Mrs. Soltani, the Crowley County Sheriff's Office issued press releases that were replete with outright false allegations (that the Sheriff's Office knew at the time were false) against Mr. and Mrs. Soltani, including:

a.  Mr. and Mrs. Soltani "killed" their baby;

b.  Mr. and Mrs. Soltani starved their children;

c.  Mr. and Mrs. Soltani's children ate non-food products like paint, plastic, and *human feces*;

d.  Mr. and Mrs. Soltani only permitted their children to eat once or twice per day;

e.  Mr. and Mrs. Soltani "evaded" law enforcement;

f.  Mr. and Mrs. Soltani sought to have their baby "resurrected";

g.  The kids were never allowed out of their rooms or allowed to play in their yard; and

h.  Mr. and Mrs. Soltani were "flight risks."

126.    Based on these false representations, the case against Mr. and Mrs. Soltani received a flurry of media attention from local and national outlets, and all of it characterized Mr. and Mrs. Soltani as monsters.

127.    Mr. Soltani was employed by the State of Colorado, Department of Human Services during the relevant time period.

128.    Because of the media attention that Crowley DHS and the Crowley County Sheriff's Office caused, the State terminated Mr. Soltani's employment effective immediately.

129.    Mr. Soltani's termination caused lost wages and it caused him to lose his pension.

130.    In September 2023, Judge MacDonnell relied on the fact of the death of Mr. and Mrs. Soltani's baby as grounds to permit Crowley DHS to take custody of the Soltani newborn even though the Colorado Court of Appeals had already said that this information was not relevant to the dependent or neglected status of other Soltani children (including even those who were alive at the time the baby died).

131.    Judge MacDonnell ordered Crowley DHS to take custody of the Soltani newborn in an ex parte, unrecorded telephone call.

132.    In approximately October 2023, Crowley DHS threatened Mr. and Mrs. Soltani that it would move the court to terminate Mr. and Mrs. Soltani's parental rights with respect to their baby born August 2022 if Mr. and Mrs. Soltani would not

agree to stipulate that their eldest six children and their baby born September 2023 were dependent and neglected.

133.    Directly in response to this threat, Mr. and Mrs. Soltani signed "no-fault" stipulations that their seven other children who remained in Crowley DHS' custody were dependent and neglected.

134.    As a result of the stipulations that Crowley DHS induced Mr. and Mrs. Soltani to sign agreeing that their children were dependent and neglected, the court placed Mr. and Mrs. Soltani on "treatment plans" that were so vague and broad sweeping that they were impossible for the Soltanis to comply with them.

135.    On July 24, 2024, after Mr. and Mrs. Soltani signed these stipulations, Crowley DHS moved to permanently terminate Mr. and Mrs. Soltani's legal and custodial parental relationships with all eight of the children as to whom the department had coerced Mr. and Mrs. Soltani into stipulating were dependent and neglected.

136.    In August 2024, Judge MacDonnell ordered in an ex parte, unrecorded telephone call that Crowley DHS take custody of Mr. and Mrs. Soltani's newborn baby in reliance on the same information as he had improperly relied on to take custody of the Soltani newborns born August 2022 and September 2023.

137.    Judge MacDonnell ordered Crowley DHS to take custody of the August 2024 Soltani newborn even though he knew that, at the time, Mr. and Mrs. Soltani

lived in Pueblo County and that venue was, therefore, improper in Crowley County District Court.

138.    A different Crowley County District Court judge, Samuel Vigil, ordered the case that Crowley DHS had initated against Mr. and Mrs. Soltani in August 2024 to be transferred to Pueblo County District Court, where venue was proper.

139.    Even though venue was not proper in Crowley County District Court, and therefore the court had no jurisdiction over the matter, Judge Vigil ordered that Crowley DHS keep custody of the Soltani newborn and then transfer custody of that newborn to Pueblo DHS.

140.    In November 2024, Judge MacDonnell terminated Mr. and Mrs. Soltani's parental rights as to their eight eldest children because Mr. and Mrs. Soltani had failed to achieve 100 percent compliance with their treatment plans.

141.    Judge MacDonnell terminated Mr. and Mrs. Soltani's parental rights even though there has never been an adjudicated factual finding, upheld, that found Mr. and Mrs. Soltani had abused or neglected their children.

142.    In January 2025, Crowley DHS coerced Mrs. Soltani into pleading guilty (for a deferred judgment with unsupervised probation) to criminally negligent homicide with respect to the Soltani baby who died in August 2021—even though she did not cause that baby's death—by creating the false impression that they would facilitate the return of Mr. and Mrs. Soltani's baby born August 2024 if she did so.

143.    Mrs. Soltani, accordingly, pled guilty to one count of criminally negligent homicide of her baby, on January 15, 2025.

144.    Pursuant to the plea agreement, the court sentenced Mrs. Soltani to two years unsupervised probation, meaning that her only condition of probation is that she not commit a crime within the two-year probation period.

145.    Further, the court deferred judgment on Mrs. Soltani's plea, which means that once she successfully completes her unsupervised probation, the court will dismiss and seal the case.

146.    The prosecutor dismissed the criminal case against Mr. Soltani in its entirety because Mrs. Soltani agreed to plead guilty as above.

147.    The prosecutor on Mr. and Mrs. Soltani's criminal cases said he would have dismissed both cases against Mr. and Mrs. Soltani, but he was afraid he would have lost his job if he had done so.

148.    Instead, he told Mr. and Mrs. Soltani that if "someone" would just "take accountability" for the death of the Soltani baby in 2021 (resulting from undetermined causes in a COVID-19 positive infant), everyone could just move on.

149.    Only because she thought it would help her get her baby born in 2024 back from Pueblo DHS did Mrs. Soltani agree to be the "someone" who would "take accountability."

## PRESENT DAY

### I.    The Pueblo County District Court Dismisses the D&N Proceeding Related to Mr. and Mrs. Soltani's Youngest Child.

150.    With respect to the youngest Soltani child, born August 2024, Judge MacDonnell permitted Crowley DHS to take the newborn from the hospital where it was born even though he knew that Mr. and Mrs. Soltani did not then live in Crowley County and, therefore, that Crowley County had no jurisdiction over the case.

151.    After Judge MacDonnell ordered that the Soltani baby born in 2024 be taken into Crowley County's custody, a different judge transferred venue of the case to Pueblo County District Court.

152.    Accordingly, Pueblo DHS took over the prosecution of the dependency and neglect proceedings and took custody of the Soltani baby.

153.    After the case had been pending in the Pueblo County District Court for over a year, Mr. Soltani's counsel filed a motion for summary judgment seeking dismissal of the case even though Pueblo DHS was seeking to terminate Mr. and Mrs. Soltani's parental rights.

154.    A key basis for the motion for summary judgment was the deposition testimony of the Pueblo DHS case worker assigned to the Soltani case, Michelle Herrera.

155.    Ms. Herrera testified at her deposition that Mr. and Mrs. Soltani had been 100 percent compliant with all court orders, including treatment, home visits,

etc., and that she had zero safety concerns for the Soltani baby if legal and physical custody were to be fully returned to her parents.

156.    Ms. Herrera also testified that she had previously recommended that the dependency and neglect case against Mr. and Mrs. Soltani be dismissed.

157.    Ms. Herrera conferred with the guardian *ad litem* ("GAL") assigned to represent the Soltani baby's interests in the case (a different GAL than the one the conflicted Judge Manley had tapped to take over the matter), and the GAL agreed that the case should be dismissed.

158.    Nevertheless, Ms. Herrera testified, Pueblo DHS "admin" had directed her to seek termination of Mr. and Mrs. Soltani's parental rights with respect to their youngest child.

159.    Ms. Herrera had never had an administrator direct her on a case in the way that she experienced on the Soltani case.

160.    Pueblo DHS administrators had staffed the Soltani case with Crowley DHS, and on information and belief, those administrators were acting under the influence of Crowley DHS when they asserted that Mr. and Mrs. Soltani's parental rights should be terminated.

161.    After reviewing Ms. Herrera's deposition testimony, the Pueblo County District Court dismissed the dependency and neglect case against Mr. and Mrs. Soltani and fully restored their parental rights with respect to their youngest child.

162.    Pueblo DHS fired Ms. Herrera the day the Pueblo County District Court dismissed the D&N case against Mr. and Mrs. Soltani related to their youngest child.

163.    The Pueblo County District Court found that Mr. and Mrs. Soltani had done everything that had been asked of them and more and that they posed no safety risk to their daughter.

164.    The court even remarked at how he could not remember a case that did not involve allegations of substance abuse, as Mr. and Mrs. Soltani's does not.

165.    Mr. and Mrs. Soltani's youngest daughter is now home with them.

## II.    Crowley DHS, in Cooperation with Pueblo DHS, Persists in its Efforts to Effectively Sterilize Mr. and Mrs. Soltani.

166.    Crowley DHS and Pueblo DHS assert that because Mr. and Mrs. Soltani's baby died in 2021, and subsequently there were dependency and neglect proceedings against Mr. and Mrs. Soltani with respect to their living six minor children, and then three more children, every baby that they have in the future is at risk of harm such that Mr. and Mrs. Soltani should have their parental rights terminated with respect to every one of those babies.

167.    Crowley and Pueblo DHS are, in effect, attempting to sterilize Mr. and Mrs. Soltani.

168.    In approximately August 2024, a representative of either Crowley or Pueblo DHS called the clinic where Mrs. Soltani is receiving prenatal care with respect to her current pregnancy, Southern Colorado Family Medicine, and directed that the clinic notify one or both agencies when Mrs. Soltani gives birth.

169.    On August 14, 2025, a representative of the Southern Colorado Family Medicine Clinic called Pueblo DHS and disclosed that Mrs. Soltani was pregnant and her due date.

170.    The reason that Crowley and Pueblo DHS are demanding that Mrs. Soltani's healthcare providers unlawfully disclose private medical information to them is because they intend to take the Soltani baby into custody and file a petition in dependency and neglect against them once the baby is born.

171.    Neither Crowley DHS nor Pueblo DHS has any evidence that Mr. or Mrs. Soltani has subjected or will subject their newborn to abuse or neglect.

## CLAIMS FOR RELIEF

### Claim One: Violation of Rights Protected by Colo. Const. Art. II, §§ 3, 25 and U.S. Const. Amend. XIV (Government Defendants)

172.    Mr. and Mrs. Soltani restate each allegation above as if fully set forth herein.

173.    The Due Process Clauses of the Colorado and U.S. Constitutions and the Inalienable Rights Clause of the Colorado Constitution protect the following fundamental rights:

a. The right to maintain familial relations, including for parents to retain legal and physical custody of their children;

b. The right to reproductive self-determination;

c. The right to free exercise of religious beliefs;

27

    d. The right against governmental misuse of legal process, either maliciously or with an ulterior motive;

    e. The right to fair access to the courts and to petition the government for redress of their grievances;

    f. The right to privacy in medical decisions and familial relations;

    g. The right to maintain employment without governmental interference in the same; and

    h. The right not to be coerced into alienating fundamental rights.

174. By their conduct described herein, each individual government defendant and each government agency defendant interfered with one or more of these rights protected by the Colorado and U.S. Constitutions when they, among other things:

    a. Prevented and prohibited contact between each Soltani child and Mr. and Mrs. Soltani;

    b. Affected Mr. and Mrs. Soltani's rights to physical and legal custody of their children, including eventually obtaining the termination of Mr. and Mrs. Soltani's parental rights as to eight of their children; and

    c. Caused unfounded criminal charges to be brought against Mr. and Mrs. Soltani for the purpose of affecting their rights to contact and physical and legal custody of their children.

175.   Each individual government defendant and each government agency defendant lacked a compelling interest and/or failed to demonstrate that interference with Mr. and Mrs. Soltani's fundamental rights was necessary to achieve that compelling interest.

176.   Moreover, Mr. and Mrs. Soltani were deprived of adequate procedural due process with respect to the temporary removal of each of their nine children, continued removal pending adjudication of the children's status as dependent and neglected, and termination of Mr. and Mrs. Soltani's parental rights as to eight of their children.

177.   The procedural due process errors attendant to the separation of Mr. and Mrs. Soltani from their children include, but are not limited to:

    a.   the Crowley County District Court failed to make adequate factual findings to support the children's initial or continued removal from the home;

    b.   the court and Crowley DHS actively ignored and prohibited Mr. and Mrs. Soltani from options that would have kept the Soltani family together pending resolution of their dependency and neglect cases;

    c.   the Crowley County District Court failed to hold Crowley DHS to its burden of proof in demonstrating that termination of Mr. and Mrs. Soltani's parental rights was necessary to achieve a compelling governmental interest;

d.  the Crowley County District Court terminated Mr. and Mrs. Soltani's parental rights with respect to their eldest eight children even though there has *never* been a finding—except the one overturned on appeal—that Mr. and Mrs. Soltani abused or neglected their children;

e.  the Crowley County District Court terminated Mr. and Mrs. Soltani's parental rights with respect to their eldest eight children because they had been in foster care too long, not because termination was necessary to achieve a compelling governmental interest;

f.  no reasonable person would anticipate that termination of parental rights could result from "conduct" that the Crowley County District Court relied on to terminate Mr. and Mrs. Soltani's parental rights; and

g.  the terms of the treatment plan that Mr. and Mrs. Soltani were forced to participate in were so vague as to deprive Mr. and Mrs. Soltani of a reasonable opportunity to achieve them considering that the consequence for not achieving them was *termination of their parental rights* and a prohibition on future contact with their children.

178.  By their conduct herein, each named government agency defendant interfered with one or more of these rights protected by the Colorado and U.S. Constitutions.

179. As the result of the Government Defendants' conduct, Mr. and Mrs. Soltani have experienced injuries, damages, and losses in amounts to be proved at trial.

180. The Government Defendants' conduct is part of a pattern and practice of, among other things:

a. interfering with Mr. and Mrs. Soltani's right to reproductive self-determination;

b. abusing the legal process in order to adversely affect Mr. and Mrs. Soltani's right to maintain family relations;

c. taking babies and children from parents under circumstances other than when doing so is necessary to achieve a compelling governmental interest; and

d. coercing parents into entering into "no-fault" stipulations of dependency and neglect in order to set in motion a series of events that will ultimately lead to termination of their parental rights, permanently sever their relationship with their children, and render the children parentless.

181. In addition to causing Mr. and Mrs. Soltani injuries, damages, and losses, the Government Defendants' pattern and practice of interfering with Mr. and Mrs. Soltani's fundamental rights puts them at risk of imminent harm.

182.    In particular, Mr. and Mrs. Soltani face imminent risk that either Crowley DHS or Pueblo DHS will rely on false or misleading information to induce a court to order removal of Mr. and Mrs. Soltani's newborn, who is expected any day.

183.    For the Government Defendants' violation of their rights protected by Article II, Sections 3 and 25 of the Colorado Constitution, and the Fourteenth Amendment to the United States Constitution, Mr. and Mrs. Soltani seek all relief that may be available to them at law or in equity, including but not limited to money damages, costs, attorneys' fees, and declaratory and injunctive relief.

### Claim Two: Violation of Rights to Religious Freedom and Free Exercise of Religion Protected by Colo. Const. Art. II, § 4 and U.S. Const. Amend. I, incorporated to the states by U.S. Const. Amend. XIV

184.    Mr. and Mrs. Soltani restate every allegation above as if fully set forth herein.

185.    The Colorado and United States Constitutions protect Mr. and Mrs. Soltani's free exercise of their religion.

186.    Two ways in which Mr. and Mrs. Soltani have chosen to practice and exercise their sincerely held religious beliefs is by choosing to be married to one another and choosing the size of their family.

187.    The Government Defendants' conduct as described herein has unreasonably restrained Mr. and Mrs. Soltani's ability to practice their religious beliefs by choosing to stay married and choosing the size of their family.

188.    In addition, Crowley DHS' conduct in separating Mr. and Mrs. Soltani from their children has been motivated by religious animus, as demonstrated by the following, among other things:

    a.    Refusing to ensure Mr. and Mrs. Soltani's religious beliefs with respect to child rearing are honored in foster care, including by permitting foster parents to have the children's hair cut, allowing children to be nude in front of one another, and permitting the children to attend Mormon religious services and engage in Mormon religious practices;

    b.    Pressuring Mr. and Mrs. Soltani to agree to have their kids vaccinated;

    c.    Criticizing Mr. and Mrs. Soltani's decision to homeschool their children; and

    d.    Repeatedly pressuring Mrs. Soltani to divorce Mr. Soltani, including Defendant Allen telling Mrs. Soltani after the court terminated her parental rights that it was Mr. Soltani's fault that Mrs. Soltani lost her kids.

189.    For the Government Defendants' violation of their rights protected by Article II, Sections 4 of the Colorado Constitution, and the First Amendment of the United States Constitution, Mr. and Mrs. Soltani seek all relief that may be available to them at law or in equity, including but not limited to money damages, costs, attorneys' fees, and declaratory and injunctive relief.

**Claim Three: Tortious Invasion of Privacy (Medical Defendants)**

190.    Mr. and Mrs. Soltani restate every allegation above as if fully set forth herein.

191.    The Medical Defendants intentionally invaded Mr. and Mrs. Soltani's privacy by discussing the facts of the prior D&N cases against Mr. and Mrs. Soltani with Crowley DHS.

192.    The Medical Defendants' invasion of Mr. and Mrs. Soltani's privacy was offensive from a reasonable person's standpoint.

193.    The Medical Defendants publicly disclosed, to Crowley DHS, private medical facts about Mr. and Mrs. Soltani, in particular that they had given birth to a healthy baby girl in August 2024.

194.    The fact and details of the birth of Mrs. Soltani's daughter was private before the Medical Defendants disclosed it to Crowley DHS.

195.    The Medical Defendants knew that the fact and details of the August 2024 birth of the Soltani baby were private because these facts are protected by federal law and the physician-patient privilege.

196.    A reasonable person would find it offensive that the Medical Defendants disclosed the fact and details of the August 2024 birth of the Soltani baby to Crowley DHS, under the circumstances.

197.    The Medical Defendants' invasion of Mr. and Mrs. Soltani's privacy and disclosure to Crowley DHS of private medical facts caused Mr. and Mrs. Soltani injuries, damages, and losses, including removal of their baby born August 2024.

**Claim Four: Abuse of Legal Process (Medical Defendants)**

198.    Mr. and Mrs. Soltani restate each and every allegation above as if fully set forth herein.

199.    Colorado dependency and neglect investigations are legal proceedings.

200.    The Medical Defendants knowingly caused a dependency and neglect proceeding to be initiated against Mr. and Mrs. Soltani when they disclosed privileged and confidential medical information to Crowley DHS in August 2024.

201.    The purpose of the Medical Defendants' unlawful disclosure of Mr. and Mrs. Soltani's privileged and confidential medical information to Crowley DHS was to cause dependency and neglect proceedings to be initiated against Mr. and Mrs. Soltani in August 2024.

202.    The Medical Defendants had no knowledge of abuse of the Soltani baby born August 2024, and in fact knew with certainty that the Soltani baby had not been abused or neglected.

203.    The Medical Defendants disclosed privileged and confidential medical information to Crowley DHS with the intent and purpose that Crowley DHS unlawfully remove the Soltani baby born August 2024 from Mr. and Mrs. Soltani's physical and legal custody.

35

## Claim Five: Malicious Prosecution (Medical Defendants)

204.    Mr. and Mrs. Soltani restate every allegation above as if fully set forth herein.

205.    A dependency and neglect proceeding was brought against Mr. and Mrs. Soltani in relation to their baby born August 2024.

206.    The dependency and neglect proceeding was brought as the result of statements impliedly alleging Mr. and Mrs. Soltani had abused or neglected their baby made by the Medical Defendants to Crowley DHS.

207.    The dependency and neglect proceeding terminated in Mr. and Mrs. Soltani's favor.

208.    The Medical Defendants knew that their statements implying that Mr. and Mrs. Soltani had abused or neglected their baby were false.

209.    The Medical Defendants' statements implying that Mr. and Mrs. Soltani had abused or neglected their baby born August 2024 were motivated by malice toward Mr. and Mrs. Soltani and a desire to interfere with Mr. and Mrs. Soltani's fundamental rights to physical and legal custody of their children.

210.    As a result of the dependency and neglect case against them, Mr. and Mrs. Soltani had injuries, damages, and losses.

WHEREFORE, Plaintiffs Jason and Joy Soltani respectfully request that the Court enter judgment in their favor and against Defendants, affording them all remedies available in law and equity, including but not limited to:

a. Appropriate declaratory and injunctive relief, pursuant to C.R.C.P. 57 and the Court's inherent authority to enjoin unlawful conduct, including preliminary injunctive relief;

b. Compensatory and punitive damages as may be awarded pursuant to 42 U.S.C. § 1983 and § 13-21-131, C.R.S., and as contemplated at law;

c. All costs and attorneys' fees as may be permitted under Colorado or federal law;

d. Pre- and post-judgment interest as may be permitted under Colorado or federal law; and

e. Such other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted this 14th day of January, 2026.

**VANGUARD JUSTICE LLC**

*s/ Elisabeth L. Owen*
Elisabeth L. Owen
1490 Lafayette St., Ste. 308
Denver, CO 80218
T: 720.206.4507
E: lisi@vanguardlawandpolicy.com

*Attorney for Plaintiffs Jason and Joy Soltani*